UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY TARJEFT,

      Plaintiff,                         Case No. 4:20-cv-13306

                                          District Judge Matthew F. Leitman

v.                                  Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.      Introduction

This is a social security case.  Plaintiff Kimberly Tarjeft (Tarjeft) brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 18, 19), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ's) conclusion that Tarjeft is not disabled under

1

the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 19) be GRANTED, Tarjeft's Motion for Summary Judgment (ECF No. 18) be DENIED, and that the ALJ's decision be AFFIRMED.

## II.  Background

### A.  Procedural History

Tarjeft was one day shy of 50 years of age at the time of her amended alleged onset date of April 7, 2018.  (ECF No. 12, PageID.217-218).  She previously worked as a caregiver, custodian, and mail sorter.  (*Id*., PageID.221).  Tarjeft alleged disability due to nerve damage in her pelvis and feet, arthritis in her neck and shoulders, neuropathy, headaches, multiple sclerosis (MS), and lesions of the brain and spinal cord.  (*Id*., PageID.232).

After Tarjeft's application was denied at the initial level on April 22, 2019 (*Id*., PageID.57), she timely requested an administrative hearing, which was held on October 10, 2019, before the ALJ.  (*Id*., PageID.77-108).  Tarjeft testified at the hearing, as did a vocational expert (VE).  (*Id*.).

Tarjeft offered the following testimony at the hearing.

She lived with her husband and was able to stay home alone and leave the house alone.  (*Id*., PageID.83-84).  There were stairs in the home that she was able to climb independently.  (*Id*., PageID.85-86).  She was also able to prepare simple meals and independently meet her own personal needs.  (*Id*., PageID.84).  She

2

found showering difficult and required the use of a shower chair. (*Id*.). Tarjeft no longer put on makeup or fixed her hair. (*Id*.). She struggled both physically and emotionally to complete chores. (*Id*., PageID.84-85).

Tarjeft had a driver's license and drove approximately three times each week. (*Id*., PageID.86). Her son lived "five streets down" from her and she went to his house to visit her grandchildren. (*Id*., PageID.87).

She graduated from high school and completed two years of college. (*Id*., PageID.88-89). Tarjeft was previously certified as a home care nurse's assistant and her basic life support certification was expired. (*Id*., PageID.89).

Tarjeft had not worked since April 7, 2018. (*Id*., PageID.90). Her previous work included being an in-home caregiver, custodian, and mail sorter. (*Id*., PageID.90-93). As a caregiver, she had to lift over 100 pounds. (*Id*., PageID.91). Tarjeft only worked as a mail sorter for a short time because she struggled with dyslexia. (*Id*., PageID.92-93).

Tarjeft believed that she was unable to work because she often became confused and forgetful. (*Id*., PageID.94). She also worried about her lack of strength. (*Id*.). Tarjeft also randomly lost her vision on five separate occasions. (*Id*., PageID.95-96). She denied receiving any mental health treatment. (*Id*.).

On December 11, 2019, the ALJ issued a written decision finding that Tarjeft was not disabled. (*Id*., PageID.54-71). On October 14, 2020, the Appeals

Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id.*, PageID.43-47).  Tarjeft timely filed for judicial review of the final decision.  (ECF No. 1).

B.     Medical Evidence[1]

1.     Medical Records

Beginning in February of 2015, Tarjeft received regular treatment at Beaumont.  Although most of the records predate the April 7, 2018 alleged onset date, the relevant potions will be summarized as they provide important background information.

On March 11, 2016, Tarjeft reported neuropathy.  (*Id.*, PageID.354).  She was prescribed Cymbalta for "[i]ntractable neuropathic pain of lower extremity, unspecified laterality."  (*Id.*, PageID.361).  She was negative for any neurological symptoms including confusion.  (*Id.*, PageID.357).

On June 27, 2016, Tarjeft reported foot pain, stating that she felt that she was "walking on the bones."  (*Id.*, PageID.370).  Tarjeft was referred to podiatry for what was likely plantar fasciitis.  (*Id.*, PageID.374).  On July 28, 2016, Tarjeft

---

[1] The undersigned has reviewed records from Porter and Clark Chiropractic showing that Tarjeft received treatment from January 22, 2016 through January 24, 2018.  (ECF No. 12, PageID.290-301).  Because these records predate the alleged onset date of April 7, 2018, they are omitted from discussion here.  *See Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 n.8 (S.D. Ohio 2012) ("In determining whether a Plaintiff is 'disabled,' the ALJ generally only considers evidence from the alleged disability onset date through the date last insured.").

4

reported a head injury resulting from a ladder fall.  (*Id*., PageID.380).  She also reported ongoing bilateral foot pain.  (*Id*.).  An EMG was ordered.  (*Id*., PageID.386).[2]

On January 31, 2017, Tarjeft presented for a neurology follow-up complaining of widespread pain.  (*Id*., PageID.400).  Tarjeft was prescribed Neurontin to treat axonal peripheral neuropathy as indicated by an EMG but noted that she wanted to taper her use of Neurontin due to side effects.  (*Id*.).

Records reflect that Tarjeft slipped on ice on January 8, 2018.  (*Id*., PageID.410).  She reported that she "fell very hard and injured [her] right shoulder, neck, back of head, left wrist, and right side" and "was confused and lost some memory" upon hitting "the right side of her head."  (*Id*.).  Imaging and a stress test were ordered.  (*Id*., PageID.411).  Tarjeft "continue[d] to have sequelae from her fall" at a February 7, 2018 appointment.  (*Id*., PageID.416).  She complained of confusion, headaches, and trouble focusing but had not scheduled imaging studies. (*Id*.).  Overall, Tarjeft's condition was "poor," and her "emotional symptoms . . . seem[ed] out of proportion to her injuries."  (*Id*., PageID.419).  Untreated anxiety and depression were suspected, but Tarjeft was "much against medication."  (*Id*.).

---

[2] Podiatry records indicate that Tarjeft received conservative treatment for her bilateral foot pain.  (ECF No. 12, PageID.724-728).

On March 16, 2018, Tarjeft presented complaining of numerous issues, such as "chronic pain problems" and "neuropathy symptoms in both her legs." (*Id.*, PageID.423). Tarjeft was advised to consult a specialist. (*Id.*, PageID.426). On April 18, 2018, Tarjeft reported that she was receiving physical therapy on her neck and shoulder to treat arthritis. (*Id.*, PageID.430). She did not feel like she had progressed much after nine sessions. (*Id.*). On May 8, 2018, imaging results were reviewed with Tarjeft. (*Id.*, PageID.436). An MRI of her right shoulder showed a labral tear and imaging of her neck showed a lesion on her cervical cord. (*Id.*).

On June 15, 2018, Tarjeft presented complaining of "neuropathy type symptoms." (*Id.*, PageID.445). She also reported a recent fall. (*Id.*). She was advised to follow up with neurology regarding a workup for MS. (*Id.*, PageID.450).

Records created between January 18, 2019 and June 18, 2019, by Erin Frankowicz, DO reflect that Tarjeft was suspected to have relapsing remitting MS for which she began taking Tecfidera in September of 2018. (*Id.*, PageID.684, 689, 696). June 2019 records note Tarjeft's report of intermittent vision issues along with fatigue and memory loss. (*Id.*).

In June of 2019 and August of 2019, Tarjeft returned to her Beaumont primary care provider. (*Id.*, PageID.707-716). In August of 2019, Tarjeft reported

6

that her "symptoms includ[ed] dizziness, muscle spasms, word finding difficulty,
[and] hair loss." (*Id.*, PageID.707).

Records from Beaumont Orthopedic Associates dated November 6, 2017
and May 15, 2018, note reports of bilateral knee pain in 2017 and right shoulder
pain in 2018. (*Id.*, PageID.309-320). An x-ray of her knees showed "[s]light
asymmetric narrowing of medial joint compartment of the right knee." (*Id.*,
PageID.321). Tarjeft received injections in her shoulder to lessen the pain. (*Id.*,
PageID.313-314). An MRI of the right "shoulder showed RC tendinosis,
degenerative superior labral tear, AC osteoarthritis, subacromial subdeltoid
bursitis, and mild biceps tendonitis." (*Id.*, PageID.309).

April 26, 2018 records by Wyandotte Optical note Tarjeft's report of blurred
vision. (*Id.*, PageID.304-308). "The blurred vision [was] at all distances and [was]
associated with dry eyes, floaters, and flashes of light." (*Id.*, PageID.304). She
reported experiencing blurred vision for three years. (*Id.*). The diagnoses
associated with the visit included presbyopia,[3] dry eye syndrome, and vitreous
floaters. (*Id.*, PageID.307-308).

---

[3] "Presbyopia is the gradual loss of your eyes' ability to focus on nearby objects."
https://www.mayoclinic.org/diseases-conditions/presbyopia/symptoms-causes/syc-
20363328#:~:text=Presbyopia%20is%20the%20gradual%20loss,worsen%20until
%20around%20age%2065 (Last visited April 26, 2022).

2.    Medical Source Statements

On August 21, 2018, Tarjeft's treating neurologist, Dr. Frankowicz,
completed a medical source statement (physical).  (*Id.*, PageID.603-606).  She
stated that Tarjeft's diagnosis was relapsing remitting MS with a guarded
prognosis.  (*Id.*, PageID.603).  An MRI of Tarjeft's brain and spine showed lesions
and the spinal fluid consistent with MS.  (*Id.*).  Tarjeft's symptoms included
weakness, fatigue, headaches, vision changes, paresthesia, neuropathic pain,
balance/gait issues, cognitive disturbance, back pain, urinary incontinence, and
constipation.  (*Id.*).

Dr. Frankowicz estimated that Tarjeft would be off task for 25% or more of
a typical workday, and that she was incapable of even "low stress" jobs.  (*Id.*,
PageID.604).  Dr. Frankowicz noted that "stress significantly worsens . . . MS
symptoms."  (*Id.*).  She also estimated that Tarjeft would likely miss more than
four days each month of work.  (*Id.*, PageID.606).

On February 18, 2019, Tarjeft's mental status was evaluated for the SSA by
John J. Jeter, MA, LLP, LMSW and Hugh Bray, PhD., LP.  (*Id.*, PageID.624-627).
They diagnosed Tarjeft with a cognitive disorder, secondary to medical conditions,
and depression, also secondary to medical conditions.  (*Id.*, PageID.627).  Notably,
both sources found that Tarjeft was "not seen as able to manage to benefit funds

due to memory problems." (*Id*.).  Additionally, they indicated that Tarjeft could benefit from psychotherapy.  (*Id*.).

On March 25, 2019, Tarjeft's physical status was evaluated for the SSA by Bina Shaw, M.D.  (*Id*., PageID.661-667).  Dr. Shaw noted that Tarjeft was diagnosed with MS in September of 2018.  (*Id*., PageID.661).  She further noted that Tarjeft was prescribed Tecfidera, Gabapentin, and Naproxen but did not use a cane or walker.  (*Id*., PageID.662-663).  Dr Shaw concluded that "[Tarjeft] can sit, stand, walk, partially bend, and push and pull 20 pounds 8 hours a day."  (*Id*., PageID.663).

On August 1, 2019, Tarjeft's primary care provider, Jeff Kane, M.D., completed a medical source statement (physical).  (*Id*., PageID.718-721).  He stated that although a workup was ongoing, Tarjeft had been diagnosed with MS.  (*Id*., PageID.718).  Dr. Kane indicated that Tarjeft's symptoms included dizziness, insomnia, leg spasms, electric shocks in legs, fatigue, and memory problems.  (*Id*.).  He estimated that Tarjeft would be off task for 25% or more of a typical workday, and that she was incapable of even "low stress" jobs.  (*Id*., PageID.719).  Dr. Kane noted that "symptoms cause emotional distress."  (*Id*.).  He also estimated that Tarjeft would likely miss more than four days each month of work.  (*Id*., PageID.721).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

10

claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Tarjeft was not disabled under the Act. At Step One, the ALJ found that Tarjeft had not engaged in substantial gainful activity from April 7, 2018 (alleged onset date) through June 30, 2019 (date of last insured). (ECF No. 12, PageID.59). At Step Two, the ALJ found that she had the severe impairments of MS, disorders of the cervical spine, major dysfunction of the right knee and right shoulder, peripheral neuropathy, and obesity. (*Id.*). At Step Three, the ALJ found that none of Tarjeft's impairments met or medically equaled a listed impairment. (*Id.*, PageID.61).

The ALJ then assessed Tarjeft's RFC, concluding that she was capable of performing

11

light work as defined in 20 CFR 404.1567(b) except [she] can perform occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds. [She] can perform occasional balancing in uneven terrain and slippery surfaces. [She] can perform occasional stooping, kneeling, crouching and crawling. [She] can have no exposure to extreme cold or heat, vibration or vibrating tools, unprotected heights, or moving mechanical parts. [She] requires a sit and stand option at will at the workstation that would not take the individual off task more than ten percent of the workday; essentially, jobs that can be performed either sitting or standing at the individual's option. [She] can perform no overhead reaching with the right upper extremity. [She] can perform frequent handling and fingering bilaterally. [She] would further be limited to "low stress" work, which is defined as: simple, routine, and repetitive tasks in an environment free from fast-paced production requirements (such as an assembly line wherein each task must be completed within a strict timeframe) with only simple decision-making and few, if any, workplace changes (due to stress being a trigger for MS flares).

(*Id.*, PageID.63).

At Step Four, the ALJ found that Tarjeft could perform no past relevant work. (*Id.*, PageID.69). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Tarjeft was capable of performing the jobs of hand packer (35,000 jobs nationally), small products assembler (35,000), and visual inspector/checker (35,000). (*Id.*, PageID.70). As a result, the ALJ concluded that Tarjeft was not disabled under the Act. (*Id.*, PageID.71).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g). Although the court can examine

12

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one. Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42 U.S.C. § 405(g). The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . .

13

. presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

14

## V.    Analysis

### A.    The RFC

Tarjeft argues that substantial evidence does not support the RFC finding.  In particular, she argues that the ALJ failed to "properly account for the limitations stemming from [her] inability to stand for prolonged periods of time or her inability to sustain an 8-hour workday without an excessive amount of time off-task."  (ECF No. 18, PageID.751).  The Commissioner argues that the RFC finding is supported by substantial evidence.

In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability.  20 C.F.R. §§ 404.1545(a)(1) (RFC must be based on all "relevant evidence").  The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  In crafting the RFC, the ALJ must consider the restrictions alleged by the claimant.  §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

In this case, substantial evidence supports the RFC finding that Tarjeft can perform a range of exertionally light work.  In regard to Tarjeft's ability to stand for prolonged periods, the ALJ stated that "[Tarjeft] requires a sit and stand option at will at the workstation that would not take the individual off task more than ten

percent of the workday; essentially, jobs that can be performed either sitting or standing at the individual's option."  (ECF No. 12, PageID.63).  Thus, the RFC finding explicitly accounts for Tarjeft's standing limitations as actually supported by the record.

Dr. Shaw concluded that "[Tarjeft] can sit, stand, walk, partially bend, and push and pull 20 pounds 8 hours a day."  (ECF No. 12, PageID.663).  However, while Drs. Kane and Frankowicz both opined that Tarjeft cannot tolerate standing/walking for long periods, neither indicated that she was unable to stand/walk for some periods.  Tarjeft admits that Dr. Kane opined she could tolerate standing/walking for up to four out of eight hours and that Dr. Frankowicz opined she could tolerate standing/walking for up to two out of eight hours.  (ECF No. 18, PageID.752-753).

Notably, the ALJ found Dr. Shaw's opinion more persuasive than the opinions of Drs. Kane and Frankowicz because it was better supported by the physical evidence.  (*Id*., PageID.67-68).  *See* 20 C.F.R. § 404.1520c(b)(2) (supportability and consistency are the "most important" factors an ALJ considers when evaluating a medical opinion); *see also Breidenich v. Saul*, No. 19-11074, 2020 WL 5521409, at *4 (E.D. Mich. Aug. 24, 2020) (finding that substantial evidence supported the RFC where the ALJ "explicitly endorsed the state agency consultant's finding"), *report and recommendation adopted sub nom. Breidenich v.*

*Comm'r of Soc. Sec.*, 2020 WL 5514195 (E.D. Mich. Sept. 14, 2020).  Aside from the physical evidence, Tarjeft's own testimony that she did not require the use of an assistive device and could independently climb stairs supports the RFC.  (*Id.*, PageID.85-86).  *See Tallent v. Berryhill*, No. 2:16–cv–00088, 2017 WL 6033729, at *8 (M.D. Tenn. Dec. 6, 2017) (considering lack of prescribed mobility device to be part of a conservative treatment approach); *see also Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (stating that a "conservative treatment approach suggests the absence of a disabling condition").

Next, Tarjeft argues that "the ALJ neglected to take into account the significant amount of time off task [she] would experience at work due to the myriad of impairments she has."  (ECF No. 18, PageID.754).  While both Drs. Kane and Frankowicz estimated that Tarjeft would be off task at least 25% of the workday, the ALJ did not find these opinions persuasive because they were not consistent with nor supported by the physical evidence.  (ECF No. 12, PageID.63).  Additionally, Drs. Kane and Frankowicz's "off task" statements do not qualify as "medical opinions."  Predictions about how often an individual is likely to be off task are not "medical opinions" that are entitled to any particular weight or deference.  *Yousif v. Berryhill*, No. CV 16-13470, 2017 WL 5493139, at *3 (E.D. Mich. Oct. 12, 2017) (collecting cases).

Moreover, Tarjeft does not explain what impairment(s) would cause her to be off task more that 10% of the workday and why they would have that effect. She merely lists symptoms and claims that they would cause her to be off task. *See* ECF No. 18, PageID.754. This is not sufficient. To the extent she claims that her alleged mental impairments would cause her to be off task, it must be noted that Tarjeft refused both medication and counseling. *Kirkhart v. Comm'r of Soc. Sec.*, No. 1:18-CV-241, 2019 WL 2314860, at *10 (S.D. Ohio May 31, 2019), *report and recommendation adopted*, 2019 WL 4727373 (S.D. Ohio Sept. 27, 2019) ("The ALJ reasonably relied on a history of no outpatient or inpatient mental health treatment to find that plaintiff's subjective complaints of debilitating depression were not fully supported by the record.").

Tarjeft also argues that the ALJ's failure to discuss the side effects she experienced from her medications is a fatal flaw. Tarjeft testified that she experienced a myriad of unpleasant side effects while taking the MS medication Tecfidera. (ECF No. 12, PageID.96-97). Critically, however, she also testified that she stopped taking Tecfidera. (*Id*.). Accordingly, the side effects Tarjeft experienced while taking this medication were not relevant to the ALJ's RFC finding.

Finally, to the extent that Tarjeft claims that the ALJ violated SSR 85-15 by not considering her limitations, her argument should be deemed waived for lack of

development.  *See Willingham v. Comm'r of Soc. Sec.*, No. 17-11189, 2018 WL 5305082, at *9 (E.D. Mich. Aug. 22, 2018), *report and recommendation adopted*, 2018 WL 4352701 (E.D. Mich. Sept. 12, 2018).  Here, just as in *Willingham*, Tarjeft "does not provide any argument on SSR 85-15 and makes no attempt at developing an argument explaining how the ALJ failed to comply with the ruling." *Id.*; *see McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted); *see also Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims.  This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")).  Accordingly, the undersigned declines to consider whether the ALJ violated SSR 85-15.

### B.    In Sum

While Tarjeft experiences some degree of limitation, the ALJ adequately

articulated her reasons for determining that Tarjeft could perform a range of

exertionally light work, and these findings are substantially supported by the

record.  Because the non-disability determination was adequately explained and

well within the "zone of choice" accorded to the fact-finder at the administrative

hearing level, it should not be disturbed by this Court.  *Blakley, supra,* 581 F.3d at

406.

### VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion be GRANTED, Tarjeft's motion be DENIED, and that

under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be

AFFIRMED.


Dated: May 9, 2022                                  s/Kimberly G. Altman
Detroit, Michigan                                   KIMBERLY G. ALTMAN
                                                    United States Magistrate Judge

### <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 9, 2022.


s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager